UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

RICKIE L. BRUMFIELD 316164                                    CIVIL ACTION

VERSUS                                                        NO. 01-0300

N. BURL CAIN, WARDEN                                          SECTION: L. MAG. 6

## MEMORANDUM IN OPPOSITION TO APPLICATION FOR HABEAS CORPUS

### STATEMENT OF THE CASE

Petitioner, Rickie L. Brumfield, is a state court prisoner serving a life sentence without benefit of parole, probation or suspension of sentence as a result of his conviction by a jury for first degree murder, a violation of La. R.S. 14:30, on June 7, 1996. This conviction and sentence were obtained in case number 95-CR2-60089, in the 22nd Judicial District Court, Parish of Washington. Brumfield's appeal to the First Circuit was denied in **State v. Brumfield,** 96-2749 (La. 1 Cir. 11/7/97) unpublished opinion. After petitioner's writ to the Louisiana Supreme Court was denied, he filed his application for post conviction relief in the District Court urging two assignments of error: (1) denial of motion to suppress his statement because he was not *Mirandized*, and (2) ineffective assistance of counsel because his counsel conceded guilt to the jury. After these issues were denied by the District Court and the First Circuit Court of Appeal, the Louisiana Supreme Court denied the petitioner's writ on January 5, 2001, No. 00-KH-0884. Petitioner has exhausted the issues raised herein and an evidentiary hearing is not necessary for the resolution in this court. Respondent also

1



provides this court with a copy of the state court record filed in connection with this response and attaches a copy of petitioner's writ to the Louisiana Supreme Court to this response.

## ISSUES

1. The state court erred when it allowed the admission of petitioner's statement to Deputy Colston Martin because Deputy Martin did not give petitioner his *Miranda* rights.

2. Trial counsel was ineffective because he conceded defendant's guilt at trial.

## STATEMENT OF THE FACTS

The following facts are taken from the First Circuit Court of Appeal Opinion, State v. Brumfield, 96-2749, pages 2-3 (La. App. 1 Cir. 11/7/97) unpublished opinion:

> "In the early morning hours of January 20, 1995, in Washington Parish, Louisiana, defendant shot the victim, Richard Spears, three times with a shotgun. Defendant left the scene in the victim's car, but abandoned the car not far from the crime scene. Later that same morning after the victim's abandoned car was discovered, a sheriff's deputy searched for the victim at the victim's home and in his barn. The victim's body subsequently was found in the barn. The victim died as a result of the gunshot wounds.
> During the course of their investigation, sheriff's deputies went to the nearby home of Bruce Brumfield, defendant's father. Bruce was in the hospital but his sister, who had been staying at the house, allowed the deputies to look around the yard. The deputies asked if there were any guns in the house and Bruce's sister showed them his guns. The deputies spotted a fresh piece of grass on one of the shotguns. Subsequently, the deputies found shotgun shells in the home similar to the shells found at the crime scene. The deputies had obtained consent to search Bruce's home.
> On the morning of January 21, 1995, the defendant was arrested. After being given his *Miranda* rights, defendant signed a form wherein he waived his rights. In an interview with Washington Parish Sheriff's Deputies Michael and Harold Varnado, defendant indicated he understood his rights. Defendant admitted shooting the victim three times with a shotgun and shotgun shells taken from Bruce's house and taking the victim's car when leaving the scene. He admitted abandoning the car, running through a field to Bruce's house, and returning the gun to the gun rack. Defendant

denied taking the victim's wallet.

Later that same morning, Federal Bureau of Investigation Special Agent Joseph Edwards interviewed defendant. Edwards also advised defendant of his rights and defendant signed a waiver of rights form. Defendant told Edwards that at approximately 5:00 a.m. on January 20, 1995, he shot the victim in the victim's barn. Defendant explained that he then took the victim's car, drove approximately one hundred yards down the road, and abandoned the car. Defendant claimed he was angry with the victim because a few days earlier the victim had slapped and cursed defendant. Defendant again denied that he had robbed the victim of his wallet.

On January 22, 1995, Washington Parish Sheriff's Deputy Colston Martin, who was a jailer where the defendant was imprisoned, talked to defendant at the jail and permitted defendant to telephone his parents. Martin, who had known defendant his entire life, asked defendant about the victim's wallet. Although defendant initially denied that he had taken the wallet, he later admitted he took the victim's wallet and burned it behind his father's home. Prior to speaking with defendant, Martin did not re-advise defendant of his rights. According to Martin, the prison warden had suggested he ask defendant about the wallet.

The following day, Michael Varnado interviewed defendant. After re-advising defendant of his *Miranda* rights, defendant signed a waiver of rights form. At the beginning of the interview, Varnado explained defendant's rights to him again and defendant indicated he understood those rights. In this statement, defendant admitted he took the victim's wallet after he shot the victim, and indicated that the wallet contained checks and $2.00 in cash. Defendant then took the victim's car, but abandoned the car and returned to his father's home where he burned the wallet in a trash pile behind the house."

## **LAW AND ARGUMENT**

### **STANDARD OF REVIEW**

Defendant filed this petition after the effective date, April 24, 1996, of the Anti-terrorism and Effective Death Penalty Act (AEDPA). Under 28 U.S.C. Sec. 2254 (d), claims adjudicated on the merits in state court proceedings are subject to the following standards of review:

> (d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim —

3

 (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

 (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In **Drinkard v. Johnson**, the Fifth Circuit Court of Appeals analyzed the standards of review set out in the AEDPA and held that when reviewing questions of fact which were previously adjudicated on the merits by state court, a federal court may grant habeas relief only if the state court adjudication of the claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence. Id. As for questions of law, a federal court may grant habeas relief only if it determines that a state court's decision rested on a legal determination that was contrary to...clearly established federal law, as determined by the Supreme Court. Id at 768. When reviewing a mixed question of law and fact, a federal court may grant habeas relief only if it determines that the state court decision rested on an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States to the facts of the case. Id at 768. In other words, this court cannot grant habeas relief unless a state court decision is so clearly incorrect that it would not be debatable among reasonable jurist. Id at 769.

## CONFESSION WITHOUT *MIRANDA*

In this claim, defendant challenges the denial of his motion to suppress the confession that he gave to Deputy Martin because he claims he was not re-advised of his *Miranda* rights prior to giving that confession on January 22, 1995. Nonetheless, on the morning of January 21, 1995, after defendant was arrested, he was given his *Miranda* rights, waived those rights, and admitted to

Washington Parish Sheriff's Deputies Michael and Harold Varnado shooting the victim three times with a shotgun and shells taken from his brother's house. Later that same morning the FBI Special Agent Joseph Edwards interviewed defendant. He also advised defendant of his rights and was told by defendant that he shot the victim in the victim's barn. In both of these interviews, defendant denied robbing the victim of his wallet. Then, on January 22, 1995, Deputy Colston Martin talked to defendant at the jail and permitted him to telephone his parents. At this time, defendant admitted to Martin that he took the victim's wallet and burned it behind his father's home. But Martin had not re-advised defendant of his rights. Then, on January 23, 1995, after re-advising defendant of his *Miranda* rights, defendant signed a waiver of those rights and talked to Michael Varnado.

Defendant argues that because of his low intelligence level and the amount of time that passed between the interview on January 21st and that of January 22nd by Martin, he was unaware of his constitutional rights that he was waiving when he talked to Martin. Under federal law, the voluntariness of a *Miranda* waiver is reviewed de novo, but a state court finding that the suspect knew and understood his rights is entitled to a presumption of correctness. **Derrick v. Peterson**, 924 Fed. 2nd 813 (1991). Petitioner does not argue that his prior two statements were coerced or intimidated, nor does he argue that he was not advised of his *Miranda* rights. It is clear that the trial court determined that defendant understood his rights sufficiently to admit the first two statements made on January 21, 1995. Thereafter, he made a statement to Michael Varnado after being re-advised of his *Miranda* rights and signing a waiver of rights form. The state court determined that even if assuming arguendo that the introduction of the complained of confessions was erroneous because defendant was not re-advised of his *Miranda* rights, that error was harmless because of the properly advised confessions that were admitted into evidence to establish petitioner's guilt. The

state court's adjudication of this claim did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence. It is clear that this state court ruling was correct and that its conclusion would not be debatable among reasonable jurist and therefore this Federal Court should find that the claim has no merit.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims that his trial counsel was ineffective because he conceded petitioner's guilt in the voir dire to the jury. Defendant argues that this concession was an error which prejudiced him and violated his right to effective assistance of counsel as established by the United States Supreme Court in **Strickland v. Washington**, 104 S. Ct. 2052 (1984).

In order to establish a claim of ineffective assistance of counsel, petitioner must show that counsel's performance was deficient and his deficient performance prejudiced petitioner's defense. **Strickland v. Washington**, *supra*. The examination of counsel's performance must be highly differential and must consider the facts and resources available to counsel at the time of trial. **Motley v. Collins**, 18 Fed. 3rd 1223 (5th Cir.), *cert. denied*, 115 S. Ct. 418 (1994). Petitioner must also overcome the strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance. Id. Such a claim requires that petitioner show a reasonable probability that, but for counsel's error, the outcome of the trial would have been different. **Lockhart v. Fretwell**, 113 S. Ct. 838 (1993).

Counsel admitted that defendant had killed the victim. It is obvious from the reading of the transcript that the theory of this case was to avoid the death penalty for this defendant. Trial counsel succeeded with this objective. The secondary objective was to degrade the offense from first degree murder down to manslaughter or even second degree murder. Because the defendant had confessed

on one or more occasions, and these confessions were reduced to writing from the tape and video recordings, counsel knew that this evidence would be used by the prosecution to petitioner's detriment. Counsel would have been ludicrous to have argues that the defendant did not accomplish this killing and this would have been a serious mistake. Petitioner's trial attorneys accomplished the primary objective of avoiding the death penalty. Because petitioner did not suffer a prejudice from the concession of his killing the victim but, in fact avoided the death penalty the second prong of the Strickland test has not been satisfied. This claim clearly lacks merit.

## CONCLUSION

Petitioner Rickie L. Brumfield's application for federal habeas relief should be denied because his claims have no merit.

Respectfully submitted,

*[signature]*
DOROTHY A. PENDERGAST
Bar No. 9679
Special Appeals Counsel
St. Tammany District Attorney
4524 Wilson Drive
Metairie, Louisiana 70003
(504) 885-3503, (504) 258-7334

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing has been served on all parties by placing same in the United States Mail, postage prepaid, the _20_ day of _March_, 2001.

*[signature]*
DOROTHY A. PENDERGAST

**SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED**